Good morning, your honors. My name is Michael Casey Lowry. The credible evidence of record evinces that the petitioner had fully recovered from her original accident or that she had developed a new pathology following her July 2002 spilling over. That's the basis of the arbitrator and commission's decision denying causation after the first surgery in this case. There is no evidence in this record that the petitioner had fully recovered from her original accident. After that first surgery, she continued under the care of Dr. Mess, who allowed her to return to work with restrictions, later reduced to 30-pound restrictions, and continued to order physical therapy and more aggressive work before the MRI demonstrated that there was a need to go on for a second surgery. It just simply is not true. There is no evidence in this record that she had fully recovered from her original accident or that she had developed a new pathology following her July 2002 spill at home. Again, as I indicated, spill, I'll use the word spill. There is no fall at home. It's a spill on the floor of liquid that she attempted to mop up, and she's not using the arm that had been operated on when she felt an upsurge in pain in that arm. The commission said that defeats causation. And I say, well, that to me sounds like they're saying it's an independent intervening accident after the first surgery. Respondent flees from that label, flees from it. We'll have none of it. Why? Let's back up a second on what you said. There's no change in the pathology. It appeared that when there was an MRI done following the April 4th, 2002, Dr. Mess said that there was not a full thickness tear, just an intrasubstance fraying. You would agree with that. That's what he testified to, right? Then after this spill, slip, whatever you want to call it, at home on July 1st, 2002, early July 2002, an MRI is done after that, and the pathology did change. Was there not then a difference in what the MRI showed after that? It showed a different pathology? A full thickness tear as opposed to a fraying? Yes. That's exactly what it shows. That's exactly what it shows. So is that not relevant to anything? The pathology is identified in the surgery was fraying, and there's a full thickness tear at the second pathology is not caused by the July spill, the June 30th mopping spill at home. Why is that not the independent intervening accident that gives rise to the change in pathology? Excellent question. Why? Go to page 18 of his brief. On August 5th, 2002, she reported to Dr. Mess that her presurgical pain had resolved. June, early June surgery, June 30th spill, mopping. August 5th, 2002, I'm quoting, on August 5th, 2002, she reported to Dr. Mess that her presurgery pain had resolved. The only pain that remained was that associated with extremities of motion when she would get to the end point of her stretches. By November 11th, 2002, she had resolved. She was demonstrating an excellent range of motion, lacking only a couple of degrees of external rotation and three or four thoracic vertebrae levels with internal rotation. The petitioner was then cleared for restricted duty. A week later, she returned to Dr. Mess requesting and obtaining a modification in her work restrictions, lowering her lifting tolerances. The next day, she transitioned from physical therapy to work conditioning. So if the July spill is the cause of this pathology that requires a second surgery, it sure as heck is not demonstrated by that record. There's an independent intervening accident, if there is one, after November. On December 9th, she had returned, December 9th, 2002, petitioner had returned, he had a return appointment with Dr. Mess. He had no clinical entry from the date, only a prescription slip. Dr. Mess's next clinical note was dated December 23rd, 2002. By other entries, it is apparent that Dr. Mess on December 9th ordered an MRI arthrogram, a combination of diagnostic studies that had not been planned by Dr. Mess on either November 11th or November 18th. So we got November 11th, we got November 18th, we got December, he's ordering another MRI. Clearly, if June, if July, he said July of the arm trigger, but if June 30th is the independent intervening accident, it's not borne out by this record. So there's got to be another independent intervening accident somewhere else down the road. Why does it have to be an independent intervening accident breaking the causal chain? Why is that required to uphold the causal connection as to the ongoing problems at the time of arbitration? Why can't they just find that? As they did here. As they did here. Why could they not do that? Because the law of Illinois says, first of all, you do not need medical expert testimony if the facts themselves give rise to an inference of causal connection. We have a lady who has a problem. She goes on. She gets better. She gets, bopping, gets worse. She gets better. She's released to return to work with restrictions. She comes back. She says, Doc, I, you know, reduced my restrictions because you gave me too heavy lifting. He reduces them. He puts her into physical therapy. He's got her into a more extensive kind of work conditioning. And then he orders another MRI, which finds a different pathology. With no evidence in this record that there was any intervening accident, that there was anything that caused that other than what you read here, what's in this record. A return to work, physical therapy, work conditioning, change in pathology, you need another surgery. Didn't she say she felt a pop in her shoulder on the incident in July? Didn't she say she felt a pop in her shoulder? Didn't your claimant testify that while she was bopping the floor, she felt a pop in her right shoulder? Right. And subsequently, as this record indicates, she had improvement, range of motion sufficient that he's allowing her to go back to work. He has motion, he's releasing her to return to work with restrictions. He has no anticipation of problems until after that release to work, until after the physical therapy, until after the work conditioning. I said, if the records themselves, if the facts here give rise to inference, you don't need medical testimony. But we have medical testimony here. We have a medical opinion, not testimony. We have medical opinion here from Dr. Goldberg, who reviewed all of this record and at their request and said, based upon what I see here in January of 2003, her condition, as I see it, based upon that MRI report that was done, that showed the full thickness of hair, based upon what that first surgery was, based upon this record, I say it's all causally connected to the work accident. Why? How do you get around that? Where do you get around that? You get around that, the respondent would say, well, remember he said it was a March or February, an accident, so that, and barred preexisting conditions, that's my opinion. You better get around that opinion, because if that opinion stands, there is just no basis for what the arbitrator and the commission did here. As I suggested, you don't need that based upon this record, but with that evidence, there is no basis for anybody to say anything different to come to the conclusion that the patient came to here. So what does Dr. Goldberg's opinion say? He says, barring a preexisting complaint, it's all related to when she had that pop lifting the patient out of bed. The arbitrator and commission found sufficient evidence there to say, yeah, that first accident was caused, that first surgery was the cause, was causally connected to that incident. Counsel argues in this brief that although the first surgery was causally related, we can find that Dr. Goldberg's opinion, with that qualification about barring preexisting complaints, negates the second, third, and fourth surgeries. The first surgery is causally related, but because Dr. Goldberg said barring preexisting complaints, everything is causally related, and January of 2003 is causally related, barring prior complaints. The commission found, based with that evidence, yes, that her first surgery is causally related. Counsel gets around the follow-up by saying, well, the second, the third, and the fourth are not causally related because she had some preexisting complaints prior to April. Counsel argues that the first surgery is causally related, but the second, the third, and the fourth are not causally related. The second surgery is causally related, but the third, the fourth, and the fifth are not causally related. Counsel argues that the commission's reference to July spill is merely a casual reference to a fact. It has no meaning whatsoever in terms of causation here. The commission was just simply, the arbitrator was just telling us a fact, which is true, that has nothing to do with why it determined what it did. The commission and the arbitrator grabbed onto a totally irrelevant fact in stating and denying causation. That's what counsel is asking you to believe. Related that fact to you, following that the, she developed a new pathology following her July spill. That's what counsel is asking you to believe. Related that fact to you, following her July 2002 spill at home, that the only reason that there is because the arbitrator wanted to tell you about it. The commission wanted to tell you it has nothing to do with why we decided causation ends after that event. All reasonable people would see that. We all see that, that the arbitrator is just pulling out that fact out of the record and telling you about it, despite the fact that in August, September, October, November, of following that event, she's improving. She gets worse following the physical therapy and the work conditioning and the return to work. I submit to you, your honors, that the decision of the commission is against causation. It is against causation. It is against causation. It is against the manifest weight of this record. We have additionally the opinion of Dr. Nicholson that this lady had stiffness in that arm. That stiffness played a role in the failure of the surgery. Well, it played a role, we see, in the failure of the second surgery. It played a role in the failure of the third surgery and required the fourth surgery. That's absolutely consistent with the medical testimony in this record and all of the evidence in this record, that her underlying stiffness with that causally related injury and causally related first surgery is the result of the second, third, and fourth surgery. There's no reasonable person would come to a conclusion different from that. And I would ask that on that basis that you reverse the decision of the commission and arbitrator and remand the case for appropriate decision there. With regard to the issue of the other issues in the case, they were decided on the basis of causal connection, both medical and the issue of temporary total disability. I indicated that those issues, once the causal connection is established, have to be decided in light of that causal connection, and I would ask that that be part of your order. Thank you. Counsel, please. May it please the Court, I am Bill Lowry on behalf of the defendants. I litigated this case on behalf of the University of Illinois Hospital. A finding is against the manifest weight of the evidence only when no trier of fact could have agreed with the commission's finding. That standard guides us through this causal relationship issue presented in this case. It guides us through the consideration of causality given the petitioner's pathologies in this case. Now, none of the words spoken this morning by Mr. Casey, who is a fine attorney, alter the fact that the commission's decision was by no means irrational. You know Thigpen's claim. You know Thigpen is alleging that her initial partial tear and frame with surgery was caused by the fact that the patient's initial partial tear and frame, as well as her subsequent surgical procedures, which followed four months of a new MRI, would show for the first time a full thickness tear of the supraspinatus tendon, show for the first time a tear of the intra-substance, and show for the first time a tear of the labrum. These are not the same pathologies, and that was not lost on the commission, nor was it lost on the arbitrator. So what was the ostensible cause of the change in pathology? We don't know the cause of the change. I can't stand here and tell you the cause of the change, and the commission didn't tell you or try to tell you the cause of the new pathology. That is the burden of Mamie Thigpen, and that's a burden that the commission determined she failed to sustain. Even in light of the opinion of Goldberg, he's constantly referring to Goldberg's testimony as backing up this position. And he is, and when you look closely at the testimony of Dr. Goldberg, you see a couple of things. First of all, he got on the scene in 03, after the initial diagnosis, which again did not include the three tears that were shown in December of 02. He got involved after the first surgery. He got involved when following that first surgery, Thigpen told her surgeon, Dr. Mess, that her pre-op pain was gone, and that led him to say that pathology had resolved. He got involved after she gave the history of mopping and trying to get a pop in the arm. And then when he did get involved months later, you know what he did? He causally related it all to some event February of 02. In this practice, dates matter. So this is a man whose opinion is not even based on an understanding of her alleged work injury on April 4th of 02. And understand, court, please, this is not a repetitive trauma case. This woman testified on April 4th of 02. I hurt my right shoulder while I was in surgery, and that's the alleged accident for which everything else is his fault. The commission did understand it. And in looking at this entire record, and you know this, the commission said, based on the credible evidence of record, it's clear that the petitioner's pathology following her alleged work accident with the resulting surgical repair differs from the petitioner's pathology as demonstrated at the time of her second MRI of the shoulder, December 13th of 02. The credible evidence of record evinces that the petitioner had fully recovered from her original accident or that she had developed a new pathology following her July 2002 spill at home. The court is not, the commission is not saying a chain is broken. They're not saying this mopping of the spill caused it. They're simply saying this person did not prove that the subsequent diagnosed tears, all three of them, which are absolutely different from the initial diagnosis in June of 02, were related to her alleged lifting incident, April 4th of 02. The record is clear. The evidence that suggests that there had been a resolution of her original pathology which led to the first surgery is the opinion of her own Dr. Mess, who in Respondent's Exhibit 1 notes, August 5th, 2002, he notes that her preoperative pain had resolved. That is her doctor and the surgeon. So relative to that initial diagnosed partial tear and fraying which led to the first surgical procedure, it is her doctor saying that the preoperative pain had resolved. That infers that that pathology had been dealt with. We're looking at new and different pathologies which were diagnosed at the time of the MRI in December of 02. The commission has said, and I simply appeal, it is not for me or for them to address whether or not the patient was diagnosed with a partial tear or a partial fracture, but whether or not those three subsequently shown tears are related. That's the burden of Mamie Thigpen. That's a burden that she did not fulfill, and based on the credible evidence of record, one can scarcely say the finding of the commission is irrational. It isn't based on this evidence that the commission determined, the credible evidence of record shows the petitioner had recovered from her original accident and had been diagnosed with partial tear. It is that determination which I now ask you to affirm. Thank you. Thank you, Counselor.